### VANDORN RICHARDSON v. THE STATE.

#### No. 3537. Decided February 21, 1906.

**1.—Sodomy—Evidence—Conclusion of Witness.**

Upon a trial for sodomy, it was error to admit the testimony of a State's witness, to the effect that when he approached the place where defendant and the jennet were in the lane, defendant was cracking the jennet, as such testimony was an opinion and conclusion of a witness. Henderson, Judge, dissenting.

**2.—Evidence—Opinion Testimony on Facts Stated.**

Upon a trial for sodomy, the court erred in not admitting the testimony of the father of the defendant, to the effect that he was familiar with the jennet in question and her size; that she was a large jennet; that he knew the size and height of the defendant, and that with his knowledge of these facts, the defendant could not have copulated with said jennet standing on level ground.

**3.—Evidence—Isolated Circumstance.**

Upon a trial for sodomy, there was no error in excluding testimony of an isolated circumstance, of the manner in which defendant had been seen when riding the jennet in question, where it was not shown to have been similar to the transaction for which defendant was being tried.

**4.—Same—Evidence—Profert—Surprise—Postponement.**

Upon a trial for sodomy, there was no error in refusing to postpone the case, in order to allow defendant to bring in the jennet in question, and have her inspected by the jury as to her height, etc., in determining the question as to whether defendant could have copulated with said jennet standing on the ground. Besides the bill of exceptions did not show that an experiment was to be made under similar conditions that the proof offered by the State tended to show accompanied the act of copulation, and that this was to be presented to the jury; nor was any surprise shown on the part of defendant as to the character of testimony which would be offered by the State.

**5.—Misconduct of Jury—Bill of Exceptions.**

Where upon appeal the misconduct of the jury consisted in some one of the jurors making some remarks concerning defendant, that he should be convicted anyhow, etc., and there was no bill of exceptions setting up this matter, the same was not properly presented for revision; besides such remarks did not appear to have influenced any member of the jury.

Appeal from the District Court of Caldwell. Tried below before Hon. L. W. Moore.

Appeal from a conviction of sodomy; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*McNeal & Ellis,* for appellant.—Upon question of admissibility of evidence: Langford v. The State, 49 Texas Crim. Rep., —; Almendaris

v. State, 73 S. W. Rep., 1055. On the question of conclusion of witness: McClackey v. State, 5 Texas Crim. App., 329; Campbell v. State, 10 id., 562. On question of opinion of witness based upon the facts: Cannon v. State, 56 S. W. Rep., 359; Cooper v. State, 23 Texas, 337; Dill v. State, 6 Texas Crim. App., 119. On question of profert: Hodde v. State, 8 Texas Crim. App., 385; Walker v. State, 7 id., 262. On question of misconduct of jury: Parker v. State, 67 S. W. Rep., 123; Hughes v. State, id., 104; Rule 39 District Court.

*Howard Martin,* Assistant Attorney-General, for the State.—On question of conclusion of witness: Connel v. State, 10 Texas Ct. Rep., 890.

HENDERSON, JUDGE.—This conviction was for sodomy; five years in the penitentiary fixed as the penalty. The case for the State depends on the testimony of one witness, to wit: Sam Teas, a deputy sheriff. He states that on the occasion in question he was riding along the lane in the neighborhood of where appellant was, and saw appellant in the act of copulating with a jennet; that as he approached within about fifty yards, his horse made a noise, which attracted appellant's attention, and he got off the jennet and ran through a wire fence into a pasture. He pursued and shot at appellant, but failed to capture him at that time, though a night or two afterwards he did succeed. Witness does not state directly that he saw the rem in re, but that he saw appellant on the jennet at the rear end, and going through the motions as if copulating; and that when the stumbling of his horse attracted appellant's attention, he got off, and he saw his penis, and it was erect. Witness' testimony in direct examination would indicate that the position he saw appellant in was on the jennet at her rear end. On further examination, however, he stated that appellant's feet were on the ground at the time of the copulative act. Defendant was placed on the stand, and he and Teas were the only eye-witnesses. He denied the act of copulation, and stated he was sitting on the rump of the jennet, but was not copulating with her; that the first thing that attracted his attention was Teas approaching rapidly and he fired his pistol towards him, and he ran into the pasture, and Teas pursued him. There was also testimony introduced by appellant to the effect that the jennet was a good-sized jennet, and several witnesses state that standing on the ground, the jennet was about as tall as, and would come up to their navel, while they were standing on the ground. The testimony of this witness tended to show that the rear end of the jennet was about the same height as any other part of the animal, and would come up to the witness' navel. The heighth of these witnesses was not shown. One of them stated he was rather tall, but not greatly tall. Appellant's height was shown to be five feet and seven inches; and he was 17 years of age. This is a sufficient statement of the case to discuss the bills of exception.

Appellant's first bill of exceptions questions the action of the court

permitting the witness Teas to state that when he approached where defendant and the jennet were in the lane, "defendant was cracking the jennet." This was objected to because it was a conclusion and not the statement of a fact. The bill does not state the environments of this testimony, nor negative the idea that the witness had not stated the facts previously leading up to this conclusion. We think the testimony was admissible as a shorthand rendering of the facts; especially in connection with the statement of the witness as to the acts of appellant at the time. As heretofore remarked the bill should have excluded the idea that other testimony was admitted leading up to this statement of the witness.

The next bill of exceptions presents the refusal of the court to permit Vandorn Richardson (father of appellant) to state that he was familiar with animals, and that the jennet in question was a large-sized jennet, and he knew the size and height of defendant. Defendant's attorney then asked the said witness, with his knowledge of the size and height of the jennet and the height of defendant, whether or not defendant could have stood on level ground and had intercourse with said jennet. The witness would have answered, if he had been permitted, that he could not. This was objected to because it was a conclusion and opinion of the witness, and not the statement of any fact. The defect in this bill is in not stating enough to show that the question propounded was in accordance with the proof made by the State on this subject; that is, the surroundings in connection with the proferred testimony, were not stated in the bill. If the bill had stated that appellant had proved that the jennet was of a certain height at the rear end, and that appellant was of a certain height from his crotch to the ground; and further that it having been shown that the act of copulation occurred with the defendant and jennet standing on level ground, and he in that position copulated with said jennet, it would have been competent for appellant to have propounded his question, and to have had an answer from the witness to the effect, that appellant could not have copulated with said jennet in that position. The bill does not inform us that the act of copulation shown by the State, between said jennet and the defendant, was with appellant and the jennet standing on level ground. For ought that appears the jennet may have been standing in a depression or in a ditch, and not on level ground. As presented, we do not believe the court erred in excluding said testimony.

We are of opinion that the court was correct in excluding the testimony of the witness Jeff Paris, offered by appellant. This was an isolated instance, in which it is claimed the witness saw appellant riding said jennet, and it looked to him at first that, from the way he was riding said jennet, he was copulating with her, but as he approached, on closer inspection, he saw that it was the way in which he rode her that misled him. This is not shown to have been similar to the transaction testified about by State's witness.

Appellant urges that the case should be reversed because the court refused to postpone the case in order to allow appellant time to bring in the jennet, which was two or three miles in the country, and have her inspected by the jury as to her height, and also measured to aid in determining the question as to whether appellant could have copulated with said jennet standing on the ground. In this connection appellant, in his motion for new trial, appends the affidavits of his attorneys as to the height of the jennet, to the effect that she was forty-seven and one-quarter inches tall at the hips, she having been brought in after the trial, which was too late for the purpose of the trial. In connection with the motion, it is alleged that appellant was ignorant of the position in which State's witness would place him in the act of copulation with the jennet, until after the witness Teas had testified, and after he had on cross-examination stated that the appellant was not in fact on top of the jennet, and off the ground; but was standing on the ground at the time of the copulation. We do not believe that the question of surprise is properly involved. Appellant does not show that he made any attempt before the trial to find out from Teas the position in which he saw appellant copulating with said jennet, and that he refused to make any statement to them. If they had applied to him, and he had refused to tell them, or had himself mis-stated the facts to them, and they discovered for the first time the position in which appellant and the jennet were, and this witness during the trial had changed his testimony so as to take them by surprise, then we would have a different question from that here presented. As it is, the question is badly presented, that having found during the trial that the State's witness testified to the act of copulation, while the jennet and appellant were standing on the ground, that he then requested a postponement of the trial for several hours while the jennet might be sent for, and brought in so that it could be measured and examined, and shown to the jury as evidence of defendant's innocence. We do not believe that profert of the jennet could be made to the jury, if brought in. Of course, she could have been measured and appellant measured, and the facts stated to the jury. Appellant further shows in this connection that while the jury were out deliberating on the case, that the jennet was brought in sometime in the evening, and he then offered to make profert of the jennet, and have appellant stand by her, and examine and measure the jennet. We do not believe it was competent to have done this. As before stated, this character of evidence could not have been offered, though measurements could have been made of appellant and the jennet under circumstances shown to have been identical or nearly so, to those under which the act of copulation was proven by the State, and such testimony of measurements, etc., offered to the jury. We do not understand this character of testimony to have been offered, but only the proposition made to have the jennet brought in and have defendant stand by her, and have the jury measure and examine them. Nor is it anywhere manifest that an experiment was

to be made under similar conditions as the proof offered by the State tended to show accompanied the act of copulation; and that this was to be presented to the jury. We are not informed anywhere as to the character of the ground on which the State's proof showed that the jennet and appellant stood during the act of copulation. In this connection appellant appends the affidavit of his attorneys McNeal and Ellis, as to the height of the jennet, showing her to be forty-seven and one-quarter inches at the back of the hips; and appellant to be five feet, seven inches tall: being thirty and one-half inches to his crotch; and forty and one-half inches to his navel. We do not believe these affidavits are presented in such shape as to be considered. In connection with the bill, we do not believe there is shown any element of surprise on the part of appellant as to the character of testimony which would be offered, nor is there any showing such as to constitute this newly discovered evidence. On the contrary we believe that a review of this question shows appellant was lacking in diligence as to this matter, and cannot now take advantage of his own laches.

In the motion for new trial appellant sets up the misconduct of the jury. But the motion for new trial is not even sworn to by appellant. The misconduct alleged consists in some one of the jurors remarking, "that it was proper to convict defendant anyhow, because he had it in his mind to do something of the kind, and if some white woman had passed he would have raped her." There is no bill of exceptions setting up this matter. We find in the statement of facts what purports to be the testimony of three jurors on this subject. Two of them testify that they heard nothing about it, and one asserts that he heard some such remark; but did not know which one of the jurors used it. He stated that the same had no effect on him. There does not appear to be any ruling of the court based on this testimony, other than the general order overruling the motion for new trial. If it be conceded that this matter is properly presented for revision, still we are of opinion that it does not appear to have influenced any member of the jury. But one juror is produced that heard it, and he does not know who uttered it, but says it had no effect on him and he paid no attention to it.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### March 23, 1906.

HENDERSON, JUDGE.—This case was affirmed at a former day of this term, and now comes before us on motion for rehearing. A majority of the court believe that the testimony of the State's witness to the effect that when he approached where defendant and the jennet were in the lane, defendant was cracking the jennet, was not admissible; and the court below erred in allowing it to be introduced as it was an opinion and conclusion of the witness. The writer does not agree to

this, but believes that the testimony was admissible as stated in the original opinion. ·

A re-examination of the bill of exceptions taken to the action of the court in excluding the testimony of the father of appellant, to the effect that he was familiar with the jennet in question and her size; that she was a large jennet, and that he knew the size and height of the defendant, and that with his knowledge of the size and height of the jennet and height of defendant, that the defendant could not have copulated with said jennet standing on level ground,—has convinced us that the bill is comprehensive enough to raise the question as to the action of the court in excluding the same. The bill being sufficient we hold that the testimony should have been admitted. The motion for rehearing is granted, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*